J-S31028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: R.L., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.C., NATURAL MOTHER | No. 115 WDA 2017 |

Appeal from the Order dated December 19, 2016,
in the Court of Common Pleas of Allegheny County,
Orphans' Court at No(s): CP-02-AP-0000069-2016.

BEFORE: PANELLA, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.: **FILED JUNE 07, 2017**

C.C. ("Mother") appeals from the order involuntarily terminating her parental rights to R.L. ("Child") pursuant to the Adoption Act, 23 Pa.C.S. §§ 2511(a) and (b).[1] We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

The parties stipulated to the following facts with regard to the Child:[2] Child was born in September 2005. Allegheny County Office of Children,

---

[1] Mother identified R.S. as Child's father. He never participated in the proceedings. The trial court terminated his parental rights, as well as the rights of "unknown father" via the same order terminating Mother's parental rights.

[2] The evidentiary hearings in this case involved not only Child but four of her younger siblings. Mother also has three other children who were not the subject of the proceedings. Both Mother and the natural father of the three younger children have filed appeals from the order terminating their parental

*(Footnote Continued Next Page)*

Youth, and Families ("Agency") sought its first emergency custody authorization involving Child and her older siblings in 2007, but the children were not removed. The Agency became involved again with Mother following the birth of another child in October 2011. A family service plan was created on December 29, 2011, but the case was closed on July 26, 2012. The Agency again implemented services for Mother's family after the birth of another child in September 2012.

The Agency filed a dependency petition for Child on February 7, 2013, and Child was adjudicated dependent on May 14, 2013. Child was removed from Mother's custody on October 3, 2013. On October 14, 2013, KidsVoice was appointed as educational decision maker for Child for fourteen days. On July 30, 2015, secondary educational and medical decision-makers were appointed for all five children.

The Agency filed a petition to terminate parental rights ("TPR petition") on April 13, 2016. The trial court held evidentiary hearings June 10, 2016 and September 16, 2016. At the June hearing, the Agency presented testimony from a county health department employee and its caseworkers who had worked with Mother and her children over the years. At the September hearing, the Agency presented further testimony from a county

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

rights. **See** Nos. 241-244 WDA 2017 (J-S31044-17) (natural father), and Nos. 276-279 WDA 2017 (J-S31045-17) (Mother).

health department employee, the testimony of Dr. Terry O'Hara, a psychologist who evaluated interactions between Child and both Mother and the foster mother, as well as the testimony of its current caseworker assigned to the family. Although Mother was not present when the hearing began, she appeared after a court recess and testified. At the conclusion of her testimony and argument from counsel, the trial court took the matter under advisement. By order dated December 19, 2016, the trial court terminated Mother's parental rights under 23 Pa.C.S. §§ 2511(a)(2), (5), (8) and (b). This appeal follows. Both Mother and the trial court have complied with Pa.R.A.P. 1925.

**ISSUE ON APPEAL**

Mother raises the following issue on appeal:

Did the trial court abuse its discretion and/or err as a matter of law in concluding that termination of [Mother's] parental rights would serve the needs and welfare of [Child] pursuant to 23 Pa.C.S. §2511(b)?

Mother's Brief at 5.

**LEGAL ANALYSIS**

"[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). This standard of review requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *Id.* "If the factual findings are supported, appellate courts

- 3 -

review to determine if the trial court made an error of law or abused its discretion." ***Id.*** We may reverse a decision based on an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** We may not reverse, however, "merely because the record would support a different result." ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." ***Id.*** Moreover, the trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (citation omitted).

**Termination Pursuant to Section 2511(a)**

Mother concedes that the Agency presented sufficient evidence to terminate her parental rights pursuant to Section 2511(a)(2). ***See*** Mother's Brief at 10. Thus, we need not discuss Section 2511(a) further.

**Termination Pursuant to Section 2511(b)**

By not contesting the trial court's findings regarding Section 2511(a), Mother concedes her inability to parent. With respect to Section 2511(b), she argues that the trial court erred when it "compared its perceived benefits of [Child's] foster mother to [Mother's] perceived faults and applied a fault-based analysis of [her family service plan] compliance in concluding that termination of her parental rights would serve [Child's] needs and welfare." Mother's Brief at 9. In addition, Mother asserts that the trial court "failed to analyze the emotional effect that termination of parental rights would have on [Child]." *Id.* We disagree.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* The extent of the bond-effect analysis necessarily

depends on the circumstances of the particular case. ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012).

When performing a needs and welfare analysis, trial courts are permitted to consider the totality of the circumstances. ***In re Coast***, 561 A.2d 762, 771 (Pa. Super. 1989) (*en banc*). The mere existence of an emotional bond between parent and child, however, does not preclude the termination of parental rights. ***T.S.M.***, 71 A.3d at 267. Indeed, the bond between parent and child must not be viewed solely from the child's view point; rather, a bilateral relationship must exist which emanates from the parent's willingness to parent appropriately. ***In re K.K.R.-S.***, 958 A.2d 529, 534-35 (Pa. Super. 2008).

As noted above, this Court may not disturb the trial court's credibility determinations. ***In re M.G.***, ***supra***.

In the instant case, the trial court found, based primarily on Dr. O'Hara's evaluations, that although Mother and Child share a bond, it is not a healthy one. The court considered the expert's evaluation of the foster mother's interactions with Child and the strides Child has made while in her care and concluded that, given the expert evidence, the benefits of adoption by the foster mother outweighed any detriment that may be experienced by Child upon severing Mother's parental rights. The court explained:

> This Court finds that the bond between Mother and [Child] is an unhealthy one. Dr. O'Hara opined that [Child] was in need of structure, stability and permanency and the he did not have sufficient evidence that Mother was in a position to appropriately care for [Child]. This Court could not

- 6 -

agree more and has concluded that the bond between [Child] and [Mother] is not significant enough to disrupt the permanency that [Child] has achieved in her foster home. Dr. O'Hara further opined that [Child] exhibited several components of a secure attachment with her foster mother and that [Child] reported being best cared for by her foster mother.

Since being placed in her current foster home, [Child] has made remarkable progress. This progress can best be highlighted from the recommendation made by Dr. O'Hara in 2015 versus the one made in 2016. In 2015, [Child's] behaviors were so out of control in school that he was recommending that she be placed in a residential treatment facility. In Dr. O'Hara's most recent evaluation, it was reported that [Child] had transitioned into a mainstream school and had made the high honor roll. This Court must acknowledge that the foster mother in this case did an outstanding job addressing [Child's] needs. With the help of services and foster mother's constant support, [Child] has transformed dramatically. [Child] has finally achieved stability and permanency that she so desperately needed.

As such, the Court finds that the benefits of adoption outweigh any potential detriment that accompanies termination of [Mother's parental] rights. It is the opinion of this Court that [the Agency] has proven by clear and convincing evidence that termination best suits the needs and welfare of [Child]. For those reasons, the order of this Court should be affirmed.

Trial Court Opinion, 2/17/176, at 19-20.

Contrary to Mother's contentions, the trial court only compared Mother and foster mother to the extent their actions or inactions have affected Child's permanency needs. Stated differently, in considering the totality of the circumstances, the trial court concluded that the best interests of Child, including Child's emotional security, permanency, and stability, are best

served by terminating Mother's parental rights. Moreover, the court's analysis above clearly demonstrates that the trial court considered the emotional effect that termination of Mother's parental rights will have on Child.

Our review of the record supports the trial court's determination that the Agency met its burden of proving by clear and convincing evidence that Mother's parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(b). Accordingly, we affirm.

Order affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/7/2017